# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SHARN GREEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. 3:14-cv-01070 |
| | )     Judge Campbell / Knowles |
| CORRECT CARE SOLUTIONS, et al, | ) |
| | ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a Motion for Summary Judgment filed by Roberta Burns, Kimberly Murphy, Daniela Cullen, and Sarah Foster, the remaining Defendants in this action.[1] Docket No. 54. Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 55), a Statement of Undisputed Facts (Docket No. 56), the Affidavit of Melinda Stephens (Docket No. 54-1), and Plaintiff's Correct Care Solutions medical treatment records (Docket Nos. 54-2 - 54-45).

Plaintiff has filed a Response to the instant Motion (Docket No. 58), as well as a document that appears to be intended as a partial Response to Defendants' Statement of Undisputed Facts (Docket No. 57).[2]

---

[1] On May 7, 2014, Judge Campbell terminated as Defendants in this action Correct Care Solutions, Austin Bodie, f/n/u Miller, f/n/u Crowder, Amanda Buchanan, "S. Shavers," Beth Gentry, and Chris Brown (Docket No. 3); thus, the instant Defendants are the only Defendants remaining in this action.

[2] This document appears to be Plaintiff's enumerated responses to some of the statements in Defendants' Statement of Undisputed Facts; it does not, however, contain responses to all of Defendants' statements, nor does it contain any citations to the record as required by Fed. R. Civ. P. 56 and Local Rule 56.01(c).

Defendants have filed a Reply. Docket No. 59.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights when they refused to give him pain medication for 14 days and then refused to give him the pain medication of his choosing.[3] Docket No. 1. Specifically, Plaintiff avers, "This medical department are [*sic*] refusing to give me the right medical treatment and refusing to give me the right medication for my back pain."[4] *Id.* Plaintiff also avers that he was going to get a "bottom bunk slip" from Dr. Burns, but she left before he was able to do so. *Id.* Plaintiff sues Defendants in their official capacities,[5] and seeks $300,000 in compensatory damages. *Id.*

Defendants filed the instant Motion for Summary Judgment and supporting materials on September 30, 2015, arguing that Plaintiff's claims against them should be dismissed because there is no evidence that they acted with deliberate indifference to Plaintiff's serious medical needs. Docket Nos. 54, 55. Specifically, Defendants argue that Plaintiff's medical records show that he received frequent, appropriate, and timely medical treatment, and they assert that Plaintiff's disagreement with the medical treatment provided to him during his incarceration simply does not state a cause of action for deliberate indifference. *Id.* Defendants argue that because it is undisputed that Plaintiff received frequent, appropriate, and timely medical

---

[3] Although Plaintiff actually avers that Defendants violated his Fifth Amendment rights, his allegations fall under the purview of the Eighth Amendment. Accordingly, the undersigned will analyze Plaintiff's claims under the Eighth Amendment.

[4] Plaintiff wanted hydrocodone, but was given Aleve and a "nerve pill." *Id.*

[5] Plaintiff does not specify the capacity in which he sues the individual Defendants; thus, he is deemed to sue Defendants solely in their official capacities. *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989).

treatment, they are entitled to a judgment as a matter of law. *Id.*

Plaintiff responds that he was denied pain medication because Defendants gave him over-the-counter pain medication, not the hydrocodone that he had received at his previous jail. Docket No. 58. Plaintiff asserts that he had a prescription for hydrocodone from his prior jail medical provider, but that Defendants refused to prescribe or administer him hydrocodone. *Id.* Plaintiff states that he informed Defendants that the over-the-counter pain medication they gave him was not working, and he repeatedly requested that they give him hydrocodone instead, but they routinely refused. *Id.* Plaintiff also asserts that before making a medication determination, Defendants did not order him to undergo x-rays or send him out of the jail for an orthopedic consult. *Id.*

Defendants, in their Reply, contend that Plaintiff's arguments are unsupported by the medical record, but that, even if true, do not rise to the level of deliberate indifference. Docket No. 59. Defendants assert that Plaintiff's complaints that he: (1) received over-the-counter medication to treat his back pain rather than narcotic pain medication; (2) did not undergo an x-ray; and (3) was not sent out of the jail for an orthopedic consultation, even if true, do not constitute deliberate indifference, because when an inmate has been provided medical treatment and the dispute is over the adequacy of treatment, such as is the case in the instant action, that claim is not cognizable under § 1983. *Id.* Defendants note that a disagreement between an inmate and a physician regarding medical treatment does not support a claim for deliberate indifference, and they assert that neither does an inmate's desire for additional or different treatment. *Id.* Defendants further note that there is no constitutional entitlement to a particular course of medical treatment. *Id.*

For the reasons discussed below, viewing the facts and inferences in favor of the non-moving party, the undersigned finds that there are no genuine issues as to any material fact and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 54) be GRANTED, and that this action be DISMISSED.

## II. Facts[6]

### A. Affidavit of Melinda Stephens, Docket No. 54-1

Melinda Stephens is the Health Services Administrator for Correct Care Solutions, LLC ("CCS"). Docket No. 54-1, Affidavit of Melinda Stephens ("Stephens Aff."), ¶ 2. As such, her duties include the supervision and coordination of healthcare services and records. *Id.*

During Plaintiff's incarceration at the Davidson County Criminal Justice Center ("CJC"), he had numerous visits and appointments with CCS medical personnel. *Id.*, ¶ 3. A record was generated for each of Plaintiff's sick call requests, and during each of Plaintiff's visits. *Id.*

True and accurate copies of Plaintiff's relevant CCS medical records have been submitted as attached exhibits. *Id.*, ¶ 4, *citing* Docket Nos. 54-2 - 54-45.

### B. Plaintiff's Relevant Jail Medical Treatment Records, Docket Nos. 54-2 - 54-45

Plaintiff underwent a medical intake screening on July 12, 2013 at the CJC. Docket No. 54-2. None of the Defendants in this action performed Plaintiff's intake screening. *Id.* During his intake screening, Plaintiff did not report having chronic back pain. *Id.*

On July 20, 2013, a nurse evaluated Plaintiff. Docket No. 54-6. Plaintiff reported having

---

[6] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

back problems for which he had been treated at Nashville General Hospital and had taken Lortab in the past, and he requested a bottom bunk. *Id.* The nurse noted that Plaintiff had a full range of motion sitting and standing. *Id.* The nurse contacted Nurse Practitioner Foster for orders. *Id.* Nurse Practitioner Foster entered an order for Plaintiff to receive a bland diet for 90 days; she prescribed Ibuprofen for Plaintiff's back pain and a nebulizer for Plaintiff's asthma; she scheduled an appointment for July 26, 2013 for Plaintiff; and she requested Plaintiff's medical records from Nashville General Hospital. Docket No. 54-7.

On July 23, 2013, Plaintiff's Ibuprofen prescription was increased to 800 mg twice daily for the next 5 days. Docket No. 54-9.

On July 26, 2013, Plaintiff had an initial chronic care visit with Nurse Practitioner Foster. Docket No. 54-10. During this visit, Plaintiff did not complain of back pain. *Id.*

On August 3, 2013, Dr. Roberta Burns ordered that Plaintiff receive 800 mg of Ibuprofen twice daily for 30 days. Docket No. 54-14.

On October 28, 2013, Plaintiff underwent another receiving screening performed by Registered Nurse Leah Nobles. Docket No. 54-16. During that screening, Plaintiff did not report a history of back pain, nor make a current complaint of back pain. *Id.*

Also on October 28, 2013, Dr. Burns ordered Prednisone, Azithromycin, and Albuterol for Plaintiff. Docket No. 54-17. Additionally, a medication verification form was faxed to the Downtown Clinic Lentz to verify Plaintiff's then-current prescriptions. Docket No. 54-18.

On November 8, 2013, Plaintiff had a chronic care visit with Nurse Practitioner Daniella Cullen, during which Plaintiff complained of back pain dating back seven years for which he had received treatment at Nashville General Hospital. Docket Nos. 54-20, 54-21. Nurse Practitioner

5

Cullen prescribed Plaintiff Lisinopril for his hypertension and 500 mg of Naproxen twice daily for 30 days for his back pain. *Id.* Nurse Practitioner Cullen also entered an order to obtain records from Nashville General Hospital regarding Plaintiff's back pain, and she recommended that Plaintiff have a follow-up visit with her in 90 days. *Id.*

On December 9, 2013, Nurse Practitioner Cullen ordered another 30 days of 500 mg of Naproxen for Plaintiff. Docket No. 54-22.

A medication verification form was faxed to Rite Aide on December 24, 2013. Docket No. 54-25. Plaintiff's Rite Aide records show that Plaintiff's outside Lortab prescription was last filled on April 15, 2013. Docket No. 54-28. Plaintiff did not have a prescription or refills for Lortab from physicians outside of Correct Care Solutions, LLC after April 15, 2013. *Id.*

On January 1, 2014, Plaintiff was evaluated by Nurse Connie Crowder, LPN. Docket No. 54-27. Plaintiff requested Hydrocodone, but Nurse Crowder noted that Plaintiff's outside medical records indicated that his last prescription for Hydrocodone had been filled in April 2013, and she consulted with Dr. Burns for further orders. *Id.* Dr. Burns ordered that Plaintiff's condition continue to be monitored. *Id.*

On January 6, 2014, Plaintiff complained to Assistant Health Services Administrator Amanda Buchanan that he was being refused Lortab; she reminded him that he had not been prescribed Lortab since April 2013; and he told her that when his "doctor on the streets quit prescribing [him the] medication, [he] would have to buy them from people." Docket No. 54-28.

On January 22, Plaintiff was seen by Nurse Crowder. Docket No. 54-30. During that visit, Plaintiff complained that the Aleve he was receiving was not helping, and he requested to see a doctor who would prescribe him Hydrocodone. *Id.* Nurse Crowder scheduled an

6

appointment for him to see a health care provider to discuss his medication. *Id.*

On January 23, 2014, Plaintiff had an acute care visit with Nurse Practitioner Foster for low back pain and repeated requests for Lortab, during which Nurse Practitioner Foster prescribed Plaintiff 5 mg Norvasc to be taken daily and also ordered Plaintiff to resume his Naproxen prescription at 500 mg for 90 days. Docket No. 54-31. During this visit, Nurse Practitioner Foster educated Plaintiff on the importance of exercise and medication adherence, and noted that Plaintiff was to return to the clinic for a follow-up visit in 90 days. *Id.*

On February 10, 2014, Plaintiff had a follow-up chronic care visit with Nurse Practitioner Cullen, during which Plaintiff complained that the Tramadol, Neurontin, and muscle relaxants he had been receiving were not relieving his pain, and he again insisted on receiving Lortab. Docket No. 54-32. Nurse Practitioner Cullen noted that she would review Plaintiff's medical records and discuss his pain management at the next care committee meeting. Docket No. 54-33.

On February 19, 2014, Nurse Practitioner Cullen performed a chart review that included review of Plaintiff's records from Nashville General Hospital. Docket No. 54-34.

On February 24, 2014, Plaintiff refused his Naproxen medication, saying that it was "not working." Docket No. 54-35.

On March 9, 2014, Plaintiff was caught "cheeking" his medication during medication pass, at which time an officer found the medication on Plaintiff's person. Docket No. 54-37.

On March 26, 2014, Plaintiff had a chronic care visit with Nurse Practitioner Cullen, during which Plaintiff complained that his pain medication was not working. Docket No. 54-40. Nurse Practitioner Cullen ordered Gabapentin, NSAIDS, and Flexeril for Plaintiff's back pain.

7

*Id.* Nurse Practitioner Cullen also ordered a two week follow-up appointment for Plaintiff with Dr. Burns for pain management. *Id.*

On April 18, 2014, Plaintiff was evaluated by Nurse Kimberly Murphy, LPN. Docket No. 54-44. Plaintiff ambulated into the clinic without difficulty and, upon examination, had a full range of motion. *Id.* During his evaluation, Nurse Murphy informed Plaintiff that he had an appointment with a health care provider scheduled within the next 10 days. *Id.*

On April 21, 2014, Nurse Practitioner Foster prescribed Plaintiff 90 days of 500 mg of Naproxen. Docket No. 54-41.

On April 28, 2014, Nurse Practitioner Foster 300 mg of Gabapentin twice daily for 90 days for Plaintiff. Docket No. 54-41.

On May 2, 2014, Plaintiff was evaluated by Nurse Practitioner Foster during an acute care visit for his low back pain, during which Plaintiff reported that the Gabapentin improved his pain but did not last throughout the day. Docket No. 54-45. Nurse Practitioner Foster increased Plaintiff's Gabapentin prescription to 600 mg twice daily for the next 90 days, and also renewed Plaintiff's 5 mg Norvasc prescription for 90 days. *Id.*

Also on May 2, 2014, Plaintiff's order for a bottom bunk was entered. *Id.*

### III. Analysis

#### A. Local Rule 56.01(c)

Local Rule 56.01(c) states, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation

8

to the record. . . .

As noted above, Plaintiff has filed what appears to be intended as a partial response to Defendants' Statement of Undisputed Facts. *See* Docket No. 57. Plaintiff's "Response" neither addresses all of Defendants' Statements of Undisputed Facts, nor contains the requisite citations to the record. *See id.*

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to properly respond to Defendants' Statement of Undisputed Facts. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the

burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C.  42 U.S.C. § 1983**

**1.  Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2. Eighth Amendment**

**a. Generally**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed,
> nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the

unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

**b. Deliberate Indifference To Serious Medical Needs**

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the

12

defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994)).

## C.  The Case at Bar

As noted, Plaintiff alleges that Defendants have been deliberately indifferent to his serious

medical needs by not giving him pain medication for 14 days; by "refusing to give [him] the right medical treatment and refusing to give [him] the right medication for [his] back pain"; and by not giving him a "bottom bunk slip" before Dr. Burns left. Docket No. 1.

It is undisputed that Plaintiff did not report having chronic back pain during his medical intake screening on July 12, 2013, or on several visits thereafter. *See* Docket Nos. 54-2 - 54-45. It is further undisputed that, between July 12, 2013 and May 2, 2014, Plaintiff was treated by CCS medical personnel on numerous occasions, given different pain medications, and given the requested order for a bottom bunk. *Id.* Although Plaintiff's preference was to receive Hydrocodone (Lortab) for his back pain, he was instead administered such pain medications as Ibuprofen, Naproxen, Norvasc, Gabapentin, NSAIDS, and Flexeril for his back pain.

Because it is undisputed that Plaintiff received medical treatment, this is not a case where medical care has been denied; rather, it is a case where Plaintiff disagrees with the treatment he received and therefore seeks compensation and alternative treatment. Such disagreements, however, are insufficient to state a constitutional violation, as the Eighth Amendment guarantees that a prisoner will receive adequate medical care, not the medical care of his choice. *See, e.g., Estelle,* 429 U.S. at 104, 97 S. Ct. at 291; *Dotson v. Correctional Medical Services*, 584 F. Supp. 2d 1063, 1068-69 (W.D. Tenn. 2008). As such, Plaintiff cannot establish that Defendants violated his constitutional rights. Absent the violation of a constitutional right, Plaintiff cannot sustain his § 1983 claims.

## IV. Conclusion

For the forgoing reasons, the undersigned finds that there is no genuine issue of any material fact and that Defendants are entitled to a judgment as a matter of law. Accordingly, the

14

undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 54) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

    /s/ E. Clifton Knowles  
E. CLIFTON KNOWLES  
United States Magistrate Judge